641 P.2d 873

**H. M. L. Jr., a minor,
Petitioner/Appellee,**

v.

**The STATE of Arizona,
Respondent/Appellant.**

No. 2 CA–CIV 3757.

Court of Appeals of Arizona,
Division 2.

Feb. 13, 1981.

Rehearing Denied March 18, 1981.

Review Denied Dec. 21, 1981.

Ramon R. Alvarez, Douglas, for petitioner/appellee.

Beverly H. Jenney, Cochise County Atty. by Dushan S. Vlahovich, Bisbee, for respondent/appellant.

## OPINION

BIRDSALL, Judge.

This is an appeal from an order of the superior court discharging a juvenile from the custody of the Cochise County Juvenile Court and the Cochise County Juvenile Center in habeas corpus proceedings. The juvenile was committed to the State Department of Corrections following an adjudication of delinquency by the Cochise County Juvenile Court judge. The finding of delinquency was based on the court's determination that the juvenile had committed the criminal law violations of assault and disturbing the peace. The juvenile's criminal conduct had occurred during an episode of juvenile "gang fighting" in Douglas, Arizona. The alleged delinquent acts occurred on January 18, 1980, in the presence of law enforcement officers who immediately arrested the juvenile. He was advised of his *Miranda* rights,[1] waived them and gave a written statement admitting his involvement. He was released pending hearing after being held for 10 days in detention at the juvenile court center. A petition alleging delinquency was filed February 8 and an adjudicatory hearing was set for March 24. The juvenile and his mother were both notified of the hearing date on March 8 and his father who was out of state received notice from the mother. On March 14, an attorney was appointed to represent the juvenile.

However, on or shortly before March 11, the juvenile court center, at the direction of the judge, notified the mother to have the boy appear at the juvenile court on March 12. Other Douglas juveniles who were also believed to be involved in the gang fights and their parents were directed to be present at the same time. The purpose of the meeting was to impress upon all those present the seriousness of the charges. The session was intended to stop juvenile gang fights in the community. The juvenile court judge addressed all of those present including the juvenile and his mother. Five witnesses were sworn and testified concerning the gang fights, including the events of January 18, and 14 exhibits were admitted. The exhibits included the juvenile's written confession and at least two exhibits later admitted in his adjudicatory hearing on March 24. A deputy county attorney was present to examine the witnesses and otherwise participate in the proceeding. The evidence presented that involved the conduct of the juvenile was substantially the same as that presented at the subsequent adjudicatory hearing.

Neither the juvenile nor his mother was represented by an attorney at this March 12 session and the judge did not advise anyone present of the right to have an attorney, to remain silent, to have a hearing or to call witnesses although the judge did state that this was in the nature of a first appearance for all the juveniles. The juvenile court, at any hearing, may handle all matters at one time or in phases. 17A A.R.S., Rules of Procedure for the Juvenile Court, rule 7. Further, rule 6 provides that at the appearance before the court the child and his parents shall be advised of their right to be represented by counsel, including their right to appointed counsel if indigent, and of the juvenile's rights to remain silent, to a hearing, and to call witnesses. This is the advisory phase referred to in rule 7 and is presumably what the juvenile judge termed a first appearance. There was no compliance with rule 6 at the March 12 session. The petition filed against the juvenile was amended on oral motion of the county attorney to change the assault allegation to one of aggravated assault. No findings or adjudications were made.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On March 24, the juvenile was represented by his appointed counsel who acknowledged receipt of a copy of the petition, witnesses were called, examined and cross-examined, and exhibits were received in evidence including the juvenile's statement.

At the conclusion of this hearing, the judge found the juvenile delinquent by reason of committing two of the criminal acts alleged in the original petition. A third allegation was dismissed and the judge did not find the assault to be aggravated. There was no record of either the court session of March 12 or March 24.

On April 22, a dispositional hearing was held and the juvenile was committed to the department of corrections, "Adobe Mountain School for evaluation and, if necessary, care and treatment for a period not to exceed 90 days." However, the commitment was not to commence until "immediately after the termination of the present semester of school." [2] The juvenile was not advised in court of his right to appeal and no appeal was taken. The time for appeal, 15 days from the disposition, has long since expired. *See* Rules of Procedure for the Juvenile Court, rule 25.

The trial judge conducted an evidentiary hearing on the petition for habeas corpus and, pursuant to a request, made findings of fact and conclusions of law before entering the order from which this appeal is taken. The court's findings have been substantially set forth in the above facts. Other findings are believed to be immaterial. The trial court concluded that sufficient procedural irregularities existed to taint the entire proceeding, especially at the adjudicatory stage. The court found a denial of due process because the irregularities denied the juvenile fundamental procedural rights. It did not make a specific conclusion of law that the juvenile court, therefore, was without jurisdiction and its order void.

The issues in this case may be stated as follows: (1) In order to grant habeas corpus relief where findings of fact and conclu-sions of law are requested and made, was it necessary that the court specifically find that the juvenile court was without jurisdiction? (2) Do the findings of fact and the record support the legal conclusion that the juvenile was denied due process rights of such a nature that the juvenile court was without jurisdiction thereby making its order void?

As to the first issue, a specific finding that the juvenile court proceedings were void because of a lack of jurisdiction was not necessary. We do not question appellant's argument that before a collateral attack on a judgment can be sustained and habeas corpus relief granted the subject order must be void because of a lack of jurisdiction. This is clearly stated in Arizona by our supreme court in *Oswald v. Martin*, 70 Ariz. 392, 222 P.2d 632 (1950), and in later cases such as *State v. Montez*, 102 Ariz. 444, 432 P.2d 456 (1967). The superior court acting by a judge other than the juvenile court judge may grant habeas corpus relief to a juvenile who is unlawfully held in custody. *See Arizona State Dept. of Public Welfare v. Barlow*, 80 Ariz. 249, 296 P.2d 298 (1956). *See also In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Our supreme court has held that implied in every judgment, in addition to express findings made by the court, is any additional finding that is necessary to sustain the judgment, reasonably supported by the evidence, and not in conflict with express findings. *In re Holman's Adoption*, 80 Ariz. 201, 295 P.2d 372 (1956). Here we are not concerned with the failure to make a specific finding of fact but rather the failure to make a specific conclusion of law. Nevertheless, we reach the same result. The trial court specifically concluded as a matter of law that there was a denial of due process and then granted habeas corpus relief. This action could not be sustained unless the court had impliedly concluded that the juvenile court order was void because of a lack of jurisdiction. Whether the trial court's findings and the record support this

---

2. This is apparently the reason the juvenile was still in the "custody" of the Cochise County Juvenile Court when the Writ of Habeas Corpus was served.

388

conclusion is a separate issue which we must now consider.

█ We believe that the only findings and evidence which could possibly support the trial court's ruling concern the proceedings of March 12. Except for that proceeding, the record adequately demonstrates that the juvenile was afforded all of the due process rights established by *In re Gault, supra.* The juvenile was given appointed counsel 10 days before his actual adjudicatory hearing on March 24. In fact, his attorney testified at the habeas corpus proceeding that he had sufficient time to prepare. The juvenile personally had notice of the charges against him by reason of the petition filed in February and notice of the hearing given March 8. He confronted the witnesses at the adjudicatory hearing and his attorney cross-examined them. His attorney advised him of his right to testify or not prior to the adjudicatory hearing and they discussed this. Although the record appears to be silent, we conclude that his attorney knew of his right to summon witnesses and present evidence. In view of all the foregoing, what effect did the extra juvenile court session have on his due process rights? The adjudicatory hearing of March 24 was conducted before the juvenile judge and there is not even a suggestion in the record that the evidence presented did not support the finding of delinquency beyond a reasonable doubt or that his confession was not admissible or voluntary. The trial court in fact found that the testimony presented was substantially the same as that which the juvenile judge heard 12 days earlier.

The fact that the juvenile judge heard the same evidence twice does not constitute a due process violation. Trial judges, including juvenile judges, are often required to hear witnesses testify more than once to the same facts.

If the March 12 proceeding had resulted in the juvenile delinquency adjudication, we might reach a different result. There were substantial due process violations. However, the purpose of the March 12 proceeding was to take timely action to impress juveniles and their parents with the seriousness of gang fighting. The juvenile court has a legitimate interest in preventing future acts of juvenile delinquency. The court may even establish councils or committees for that purpose, A.R.S. Sec. 8–237. The fact that the judge chose to make this impression by receiving sworn testimony and exhibits does not void the subsequent adjudication.

█ We are not bound by the trial court's conclusions of law. *Tencza v. Aetna Casualty and Surety Co.,* 111 Ariz. 226, 527 P.2d 97 (1974); *State Tax Commission v. Howard P. Foley Co.,* 13 Ariz.App. 85, 474 P.2d 444 (1970). We hold that the record in this case does not sustain the conclusion that the juvenile was deprived of due process to such a degree that the court lost jurisdiction. We reverse the trial court and set aside the order discharging the juvenile.

█ At this point our ruling would normally reinstate the commitment order of the juvenile court. However, we must first call attention to error in that order. The juvenile code, although giving the judge wide discretion in the disposition of a delinquent child, does not authorize the disposition that was ordered. A.R.S. Sec. 8–241(A)(2)(e) requires that the award of a child to the department of corrections be made without further directions as to the placement by that department. We believe the juvenile court should have the opportunity to reconsider its disposition of the juvenile. For these reasons, we remand the case to the Cochise County Juvenile Court for proceedings consistent with this opinion.

HATHAWAY, C. J., and HOWARD, J., concur.