108 P.3d 941

**In re DANIEL A.**

**No. 1 CA–JV 04–0181.**

Court of Appeals of Arizona, Division 1, Department B.

March 15, 2005.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Andrew P. Thomas, Maricopa County Attorney, By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Suzanne Sanchez, Deputy Public Defender, Mesa, Attorneys for Appellant.

## OPINION

LANKFORD, Judge.

¶ 1 Juvenile Daniel A. appeals the disposition committing him to the Arizona Department of Juvenile Corrections ("ADJC") for a minimum of six months. Juvenile submits two contentions on appeal: (1) the disposition was unlawful and (2) the commitment violates his constitutional right to be free from cruel and unusual punishment. For the following reasons, we affirm the disposition.

¶ 2 We view the facts in the light most favorable to affirming the findings of the superior court. *See Maricopa County Juv. Action No. JS–8490,* 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994). The facts are as follows. In the past three years, Juvenile has had seven referrals to juvenile court. These referrals include theft of means of transportation, truancy, simple assault with intent to cause physical injury, and multiple counts of possession of drug paraphernalia, unlawful use of means of transportation, and theft. Juvenile was also charged with multiple probation violations. The violations alleged include using illegal substances on several occasions and failing to cooperate in drug testing and counseling, attend school, remain at home, and provide his address when moving. The court issued three warrants because of Juvenile's failure to appear at hearings.

¶ 3 Juvenile admitted to attempted unlawful use of means of transportation, unlawful use of means of transportation, simple assault, and probation violations. The court ordered Juvenile committed to the ADJC.

¶ 4 Juvenile timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8–235(A) (Supp. 2004) and 12–120.21(A)(1) (2003).

¶ 5 Juvenile argues that the disposition was unlawful because the court not only ordered commitment to the ADJC, but directed that Juvenile attend school and programs for substance abuse and anger management. Juvenile contends that the error requires vacating the entire disposition.

¶ 6 The juvenile court cannot direct the ADJC to provide specific services to a juvenile during commitment. However, this error does not invariably require that the commitment decision be vacated.

¶ 7 The juvenile court lacks authority to impose terms upon a commitment, according to *H.M.L. v. State,* 131 Ariz. 385, 641 P.2d 873 (App.1981). However, that decision rested on statutory language later amended by the Arizona Legislature. At the time, former A.R.S. § 8–241(A)(2)(e) (1988) allowed commitment "[t]o the department of [juvenile] corrections ... without further directions as to placement by that department." *H.M.L.* interpreted the statute to prohibit any directions. 131 Ariz. at 388, 641 P.2d at 876.

¶ 8 We must determine whether later statutory amendments undercut the holding of *H.M.L.* In 1994, the statute was amended to expressly permit the court to impose a single term when committing a juvenile to the ADJC, a direction concerning the duration of secure care. That version authorized the court to commit a juvenile

> To the department of youth treatment and rehabilitation without further directions as to placement by that department. From and after September 30, 1995, the court may make further directions as to placement by the department concerning the child's length of stay in secure care.

A.R.S. § 8–241(A)(2)(e) (1994). This version retained the prohibition on other further directions as to placement.

¶ 9 The 1994 version was short-lived. In 1997, the Legislature again amended the provision, deleting specific references to "further directions as to placement" and stating simply that the court could commit a juvenile "[t]o the department of [juvenile] correc-

tions." A.R.S. § 8–241(A)(2)(e) (1997). This version, renumbered as A.R.S. § 8–341(A)(1)(e) (Supp.2004), is the current statute and applies in this case.

¶ 10 The Legislature thus forbid the juvenile courts from directing placement for committed juveniles, then authorized a direction only as to the length of stay in secure care, and finally deleted any reference to the matter. Legislative history provides no further guidance. We nevertheless must determine the meaning of the statute. In doing so, "[o]ur primary goal . . . is to determine and give effect to legislative intent." *State v. Flynt*, 199 Ariz. 92, 94, ¶ 5, 13 P.3d 1209, 1211 (App.2000). We hold that the latest version expresses legislative intent to award full custody and control to the ADJC after commitment, depriving the court of the authority to impose terms in the commitment.

¶ 11 The Legislature's intent is illuminated by related statutes. "[W]henever possible we adopt a construction of a statute that reconciles it with other statutes and gives force to all statutes involved." *Achen-Gardner, Inc. v. Superior Court*, 173 Ariz. 48, 54, 839 P.2d 1093, 1099 (1992).

¶ 12 Related statutes reveal that the juvenile court cannot direct the ADJC to provide Juvenile with specific services. When the court commits a juvenile to the ADJC, it awards custody of the juvenile to the ADJC. *See* A.R.S. § 8–341(A)(1)(e) ("After receiving and considering the evidence on the proper disposition of the case, the court may . . . award a delinquent juvenile . . . [t]o the department of juvenile corrections."). After the juvenile is committed to the ADJC, it has the right to control the juvenile. "From the time of commitment to the department of juvenile corrections, a juvenile shall be subject to the control of the department of juvenile corrections until the juvenile's absolute discharge or until expiration of the commitment on the juvenile's eighteenth birthday." A.R.S. § 8–246(A) (Supp.2004). Moreover, the programs to be employed to assist the

juvenile are determined by the ADJC and not the court. "The department shall develop for each committed youth an individual treatment plan based on a diagnostic psychological evaluation and educational assessment received from the court. . . ." A.R.S. § 41–2815(A) (2004). The current statute defining the juvenile court's power authorizes it only to commit and to order the minimum length of juvenile's stay. A.R.S. § 8–341(L). These statutes indicate that only the ADJC can determine the services the juvenile receives during commitment.

¶ 13 We must now decide whether the juvenile court's error in directing specific services without authority requires that we vacate the entire disposition, including the commitment to the ADJC, rather than vacating only the improper directions. Juvenile argues that *H.M.L.* requires that we vacate the order and remand for a new disposition. In *H.M.L.*, the juvenile court ordered the juvenile committed to Adobe Mountain School for evaluation, and if necessary, care and treatment for up to 90 days. *H.M.L.*, 131 Ariz. at 387, 641 P.2d at 875. In addition, "the commitment was not to commence until 'immediately after the termination of . . . the semester of school.' " *Id.* The Court of Appeals held that the juvenile court erred in the disposition. *Id.* at 388, 641 P.2d at 876. The result was a remand for the juvenile court to "have the opportunity to reconsider its disposition." *Id.*

¶ 14 The *H.M.L.* court did not further explain why it remanded to reconsider the entire disposition. However, the juvenile had been adjudicated delinquent for simple assault and disturbing the peace in a single "episode of juvenile 'gang fighting.' " *Id.* at 386, 641 P.2d at 874. The juvenile apparently had no prior charges or delinquency adjudications.

¶ 15 In contrast, Daniel A. has a history of numerous prior referrals and probation violations. The court clearly stated that the only option for Daniel A. was commitment, a determination supported by the record.[1]

---

1. The juvenile court stated:
   [T]he Court has already made its record that you were zero tolerance, you failed to appeal,

you have two prior felonies and misdemeanor simple assault, two violations of probation. You have already been on juvenile intensive

Moreover, Juvenile does not contest his commitment to the ADJC.

¶16 We are not compelled to vacate the entire disposition merely because a part of it was improper. We may modify a disposition by deleting the unlawful provision and sustaining the remainder. *See Maricopa County Juv. No. J–86509*, 124 Ariz. 377, 604 P.2d 641 (1979) (vacating term of commitment extending confinement beyond juvenile's eighteenth birthday and otherwise affirming disposition); *Maricopa County Juv. Action No. J–87631*, 125 Ariz. 532, 611 P.2d 119 (App. 1980) (modifying an order of commitment until age 21 to limit commitment to age 18). The commitment of Daniel A. is infirm only insofar as it added directions to the ADJC. We therefore remedy that defect by deleting those directions, and we affirm the commitment order as modified.

¶17 Juvenile further asserts that his commitment constitutes cruel and unusual punishment[2] and therefore should be vacated. Juvenile's counsel has unsuccessfully made this argument in more than twenty prior appeals to this Court.

■ ¶18 Whatever the merits of the contention that the conditions of juvenile confinement in Arizona are intolerable, a direct appeal from commitment is not the appropriate method of challenge. *See State v. Schutte*, 117 Ariz. 482, 487, 573 P.2d 882, 887 (App.1977) ("Conditions at the State Prison may be the subject of judicial inquiry under certain circumstances but not in a sentencing proceeding following conviction."). Juvenile is contesting neither the fact that he was committed to the ADJC nor the length of his commitment. Juvenile only complains about the conditions of confinement.

■ ¶19 Juvenile may have other remedies. He may bring a civil rights action under 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."). In fact, Juvenile cites a § 1983 case. *Weatherford v. State*, 206 Ariz. 529, 532 n. 2, ¶7, 81 P.3d 320, 323 n. 2 (2003). An action under § 1983 is a civil action that must be brought separately, and cannot be raised as part of a juvenile delinquency proceeding.

¶20 Nor has Juvenile filed a petition for a writ of habeas corpus. *See H.M.L.*, 131 Ariz. at 387, 641 P.2d at 875 ("The superior court acting by a judge other than the juvenile court judge may grant habeas corpus relief to a juvenile who is unlawfully held in custody.").

¶21 A direct appeal is an unsuitable vehicle for such a claim for reasons well-stated by the Illinois Court of Appeals. The court rejected a direct appeal from commitment based on the argument that the confinement conditions were unconstitutional because the juvenile would not obtain appropriate drug treatment. *In re J.A.G.*, 113 Ill.App.3d 140, 68 Ill.Dec. 697, 446 N.E.2d 868, 869–70 (1983). The court noted that cases holding unconstitutional the conditions of confinement of adults or juveniles "have consistently

probation. You have already been on probation. Your TASC record is abysmal. Terrible. Terrible. You have tested 32 times; you have only been clean seven. And your staffing was, of course, for you to go to a treatment facility. But now, you know, your warrant status, you know, doesn't bode well for you to be in a facility that isn't a locked-up facility, because who is to say—it looks to me like, and I am not a fortuneteller, but it looks to me like you would just run ... The least restrictive and most effective alternative for you is to go the Department of Corrections for not less than six months' period of time.

**2.** The Juvenile relies on a letter from the United States Department of Justice to the Governor of Arizona. Juvenile attached a copy of this letter to his notice of appeal. However, this document was not presented to the juvenile court. Rule 89(D)(1) of the Rules of Procedure for the Juvenile Court provides that the record on appeal consists of a certified copy of the transcript, certified copies of all pleadings, orders and other documents filed with the clerk of the superior court, the originals of all exhibits introduced into evidence, and other documents added pursuant to the rule. "New exhibits cannot be introduced on appeal to secure reversal." *Roberts v. Spear*, 173 Ariz. 565, 567, 845 P.2d 491, 493 (App. 1992). Juvenile did not file a motion to correct the trial court record, and did not contend that the letter had been erroneously omitted. *See* ARCAP 11(e).

originated as [§ 1983] suits against officials of the institutions where the affected individuals were confined." *Id.* 68 Ill.Dec. 697, 446 N.E.2d at 869 (citations omitted).

¶ 22 In those circumstances in which a juvenile challenges the conditions of confinement at a particular facility, direct appeals are inappropriate because the sentencing judge does not elect which facility will detain a juvenile, and a juvenile will normally not have specific knowledge of the confinement he faces. *Id.* Moreover, the ordinary remedy is an injunction abating the conditions, not the "unconditional release of the . . . juvenile offenders." *Id.* (citations omitted); *see also Alexander S. v. Boyd,* 876 F.Supp. 773, 799–805 (D.S.C.1995) (declining to order release of juveniles for constitutional violations and instead ordering a detailed plan as a remedy). As we held elsewhere in this opinion, the juvenile court cannot control the conditions of confinement. That responsibility falls to the ADJC, which has custody of juveniles during their confinement. Neither an objection to the disposition in juvenile court nor a direct appeal from the disposition is a proper means to challenge the conditions of confinement.

¶ 23 Because the juvenile court erred in directing the ADJC to provide specific services to Juvenile, we modify the disposition by deleting those directions to the ADJC. We affirm the juvenile court's disposition as modified.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PHILIP HALL, Judge.