NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ALLEN MAX TEPPER, *Appellant.*

No. 1 CA-CR 16-0294
FILED 6-15-2017

Appeal from the Superior Court in Maricopa County
No.  CR2013-004836-001
The Honorable Jay Ryan Adleman, Judge; Patricia Ann Starr, Judge; Hugh
Hegyi, Judge; and Commissioners Nicole M. Brickner and Casey J.
Newcomb

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kent C. Cattani joined.

---

**K E S S L E R**, Judge:

¶1 Allen Tepper appeals his conviction and sentence for misdemeanor criminal damage. Tepper was held in custody for over two years in high security cells at the Fourth Avenue Jail during attempts to restore him to competency even though the initial charged offense could not have resulted in more than 1.5 years' imprisonment, and the amended offense for which he went to trial was a misdemeanor. While we conclude that efforts should have been made to resolve Tepper's competency to stand trial much earlier in time or to release him from confinement, we find no reversible error and accordingly affirm his conviction and sentence.

**FACTUAL AND PROCEDURAL HISTORY[1]**

¶2 On the evening of December 9, 2012, a security guard saw a person lying on the grounds of the private property he was patrolling. After driving his golf cart within a few feet of the individual, the security guard ordered the person to leave. There was no noticeable response, so the security guard walked over and "tapped" the person, who was Tepper, with his foot. Again, there was no response. Fearing the person may be dead, the security guard immediately called the police.

¶3 When officers arrived at the scene, they woke Tepper, informed him that he was trespassing on private property, and remained on-site until he left the premises. Meanwhile, the security guard resumed his patrol of the rest of the property. When the security guard later returned to the original area, he noticed Tepper was standing across the street. The security guard then watched as Tepper picked up a large rock and threw it at a building, shattering a window.

¶4 At that point, the security guard again requested police assistance. After the responding officers spoke with the security guard,

---

[1] We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

they searched the nearby area and located a man who matched the description the security guard provided. The officers detained the man and the security guard positively identified Tepper as the man he had seen throw a rock at the building.

¶5        Approximately one year later, in December 2013, the State charged Tepper with one count of criminal damage in an amount of $2000 or more but less than $10,000, a Class 5 felony. During the two-year period that followed, Tepper was cycled again and again through rounds of competency proceedings, and was ultimately found competent to stand trial in December 2015. Based on the Rule 11 examinations throughout this case, it appears Tepper was kept in the special management unit of the Fourth Avenue jail consisting of single inmate cells with restricted ability to leave the cell.

¶6        In January 2016, the superior court granted Tepper's motion to be released from custody, noting he had been held in custody "for more than 800 days," which exceeded the maximum sentence he could receive if convicted as charged. Two weeks later, Tepper did not appear for trial, and the court directed the parties to proceed in absentia. Before trial commenced, the State moved to amend the indictment to allege a Class 1 misdemeanor. Based on that amendment, to which defense counsel did not object, the court proceeded with a bench trial. *See* Ariz. R. Crim. P. 13.5(b) (allowing a charge to be substantively amended if the defendant consents to the amendment).

¶7        At trial, a representative of the property owner testified that the replacement cost for the damaged window was $2331. The court found Tepper guilty of misdemeanor criminal damage, and upon rendering its verdict, issued a warrant for Tepper's arrest. Eventually Tepper was taken into custody, and the court then sentenced him to a term of 180 days, with credit for time served. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017), and 13-4033(A)(1) (2008).[2]

## DISCUSSION

I.        Alleged Incompetence to Stand Trial

¶8        Tepper contends the superior court violated his right not to be tried while incompetent.  Although Tepper conceded at oral argument

---

[2]        We cite to the current version of statutes unless changes material to this decision have occurred.

that he does not challenge the court's Rule 11 findings, Tepper argues his conduct at the January 2016 hearing on his motion for release demonstrated that he was unable to understand the legal proceedings or assist counsel, there was no reasonable basis to believe he could have been restored to competency, and therefore the court erred by failing to dismiss the criminal damage charge.

**¶9**        "A person shall not be tried, convicted, sentenced or punished for an offense if the court determines that the person is incompetent to stand trial." A.R.S. § 13-4502 (2010); *see* Ariz. R. Crim. P. 11.1. As defined by both statute and rule, a defendant is "incompetent to stand trial" when, "as a result of a mental illness, defect or disability," he "is unable to understand" the nature and object of the proceedings or "assist in [the] defense." A.R.S. § 13-4501(2) (2010); Ariz. R. Crim. P. 11.1. "The presence of a mental illness, defect or disability alone is not grounds for finding a defendant incompetent to stand trial." Ariz. R. Crim. P. 11.1.

**¶10**        Due process and fundamental fairness require "that a defendant be armed with some minimal awareness of reality before the power of the state is exerted against him." *Bishop v. Superior Court*, 150 Ariz. 404, 407 (1986). Accordingly, even when a defendant has been found competent to stand trial, a court must remain "alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 181 (1975). In the event circumstances arise calling a defendant's competence into question, due process requires the court "to raise the issue and hold [a] hearing sua sponte." *Bishop*, 150 Ariz. at 407.

**¶11**        The basis for Tepper's argument that the charges should have been dismissed is that the superior court should have concluded his conduct at the release hearing showed he was not competent to stand trial and was not restorable to competency. We review a claim that a trial court should have sua sponte conducted competency proceedings for an abuse of discretion. *State v. Kemp*, 185 Ariz. 52, 67 (1996). Because the trial court has the opportunity to directly observe a defendant during court proceedings, we defer to the court's competency finding absent a clear abuse of that discretion. *State v. Glassel*, 211 Ariz. 33, 44-45, ¶ 31 (2005); *see Bishop*, 150 Ariz. at 409 ("On questions of competency to stand trial, not only is the judge a finder of fact, he is also a de facto witness who may take into consideration his own observations of the defendant.").

**¶12**        At the January 15, 2016 hearing on Tepper's motion for release, the superior court inquired whether Tepper wished to proceed with

4

a bench or jury trial, and defense counsel stated that she and Tepper had repeatedly discussed the matter and he wished to have a jury trial. The court then addressed Tepper directly and asked whether he was "following" the conversation. After Tepper responded affirmatively, the court asked whether he wished to have a bench or jury trial and Tepper answered, "jury." The court then discussed several scheduling and procedural issues with counsel and heard argument on Tepper's motion for release. After granting the motion, the court admonished Tepper that he would be responsible for appearing at all subsequent hearings and advised that the court would issue a bench warrant in the event he failed to appear. The following exchange then occurred:

> THE COURT: Do you understand that's the case?
>
> THE DEFENDANT: Honor Arizona. Honor Arizona.
>
> [DEFENSE COUNSEL]: You understand that you have to be here at your next court date, correct? Say "yes."
>
> THE DEFENDANT: Honor Arizona.

¶13        After instructing Tepper on the conditions of his release and informing him of the time and place of trial, the court inquired whether Tepper would be able to "get [him]self there," and Tepper again responded, "Honor Arizona." Following an off-the-record discussion between Tepper and defense counsel, the court instructed defense counsel to have Tepper sign the release papers. Another off-the-record discussion took place among the court, the deputies, defense counsel, and Tepper, in which "multiple people" spoke "simultaneously." Tepper then stated "I don't know what you're saying."

¶14        After defense counsel and a deputy informed Tepper he needed to sign his name, Tepper addressed the court directly, stating "these people do not speak logically[,] their words are not consistent with the physical reality." When the court then instructed Tepper that he needed to sign the form in order to be released, Tepper stated, "[y]ou're as stupid as the rest of them. Blind, deaf, and ignorant." Tepper explained that he could neither see "the pad" nor "physically . . . manage" a signature. Apparently referencing the "spit mask" Tepper was wearing, a deputy told Tepper he was not "going to take it all the way off," and Tepper responded, "[i]gnorant, deaf, and blind. Blind, deaf, and ignorant. Blind, ignorant, and deaf. Those men, blind, ignorant." Before being removed from the courtroom, Tepper said, "Arizona has no honor. Arizona has no honor. All your honor is ashes. All your honor is ashes."

¶15　　　　Viewing Tepper's conduct and statements within the context of the entire proceeding, and deferring to the superior court's ability to assess Tepper's competence first-hand, we cannot say that Tepper's presentation at the release hearing demonstrated such indicia of incompetence that sua sponte competency proceedings were required or the court should have concluded he was incompetent to stand trial and not restorable to competency. At the outset of the hearing, defense counsel stated that she and Tepper had repeatedly discussed Tepper's trial preferences and, when addressed directly by the court, Tepper stated he understood the court's discussion with defense counsel and confirmed that he wished to have a jury trial. Although Tepper later stated that he did not know what people were saying, the record reflects that this statement immediately followed a conversation in which multiple people were speaking simultaneously. Given this context, Tepper's declaration that he did not understand was not necessarily indicative of any type of impairment or dysfunction. Tepper also stated that he could not physically manage a signature when asked to sign his release forms and explained he could not see the pad. In light of the deputy's response that he was not "going to take it all the way off," seemingly referencing the spit mask Tepper was wearing, this statement likewise did not suggest an inability to understand what was being asked of him. We note that Tepper repeatedly said "honor Arizona" when asked whether he understood that he would be responsible for appearing at all future legal proceedings, a statement that did not clearly respond to the questions posed. He also stated "Arizona has no honor" before being escorted out of the courtroom. Notwithstanding these remarks, Tepper's other statements and conduct support a conclusion that he was aware of the proceedings, able to understand what was occurring, and capable of communicating with defense counsel and the court. Furthermore, the superior court specifically found at a prior competency hearing that Tepper's "behavior in the courtroom appeared to be exaggerated and fake." Therefore, on this record, we cannot say that the trial court abused its discretion by failing to dismiss the charges without prejudice.

II.　　　Adequacy of the Rule 11 Procedures

¶16　　　　Tepper argues the State's "Rule 11 procedures" were inadequate and failed to ensure that he was not tried while incompetent. He also asserts he did not receive any treatment for his mental condition, only "observation and delay."

¶17　　　　Because Tepper did not raise these claims in the superior court, we review only for fundamental error and resulting prejudice. *State*

*v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Due process requires that the State observe procedures adequate to protect a defendant's right not to be tried while incompetent. *Drope*, 420 U.S. at 172. In *Drope*, the Court analyzed whether a state's statutory scheme addressing mentally-ill defendants satisfied the requirements of due process. *Id.* at 173. The Court concluded the statutes at issue, which required a judge to order psychiatric examination whenever there was reasonable cause to believe a defendant had a mental disease or defect excluding fitness and hold a hearing if the opinion relative to fitness was contested, were, on their face, constitutionally adequate to protect a defendant's right to a fair trial. *Id.* Notwithstanding the constitutional adequacy of the governing procedures, the Court further held that the defendant's due process rights were nonetheless violated because the superior court failed to recognize information suggesting his incompetence, including evidence of a suicide attempt, and therefore did not order a pretrial psychiatric evaluation as mandated by statute. *Id.* at 173, 179-81.

**¶18** Like the statutes at issue in *Drope*, Arizona's statutory scheme requires a court to order a competency examination when "reasonable grounds exist," and then "hold a hearing to determine a defendant's competency to stand trial." A.R.S. §§ 13-4503(D) (2017), 13-4510(A) (2017). Consistent with these statutes, in this case, the superior court repeatedly ordered competency examinations for Tepper, and then held evidentiary hearings to evaluate the medical opinion evidence. Therefore, the competency procedures governing this matter were constitutionally adequate.

**¶19** To the extent Tepper also contends he was not provided treatment to restore his competency, the record reflects that the State offered Tepper treatment, which he refused. Equally important, as discussed *supra* ¶¶ 8-15, Tepper does not challenge the superior court's finding that he was restored to competency as of December 15, 2015 and, on this record, there is no basis to conclude he was thereafter rendered incompetent to stand trial. Thus, Tepper has neither demonstrated that the State's incompetency procedures violate due process nor that he was prejudiced by the procedures as applied in this case.

**¶20** Tepper also argues the court erred in keeping him confined for over two years through three rounds of attempts to restore him to competency, which was greater than any sentence of imprisonment either on the felony charge or the later misdemeanor charge. We agree that in this sense, the criminal justice system failed. At the request of his attorney, Tepper was referred for a Rule 11 examination within weeks of his

indictment and arrest in December 2013. In April 2014, the superior court found him incompetent to stand trial, but restorable and thus placed him in the county's correctional services restoration program. This was the first referral to the program for Tepper in this case. Approximately two months later, the court found him to have been restored to competency. Two months later, in July 2014, defense counsel asked for a second round of Rule 11 examinations, on which the State took no position on and which motion the court granted. Approximately six months later, in January 2015, slightly more than one year after his arrest, the court held an evidentiary hearing on competency, during which defense counsel argued Tepper was incompetent to stand trial and not restorable, but asked the court to send him back for more restoration as an alternative. The State successfully argued Tepper was competent to stand trial. Four months later, in April 2015, defense counsel asked for a third round of Rule 11 examinations, which motion the State opposed. The superior court granted that motion and in September 2015, after almost two years of confinement and exceeding the time Tepper could have served if convicted of the felony, the court found that he was incompetent to stand trial but restorable, thus triggering a third round of restoration. During an evidentiary hearing in December 2015, over two years after Tepper's arrest, defense counsel argued that Tepper was incompetent to stand trial and not restorable and asked the court to dismiss the charges given that Tepper had been in custody for more than he could have been sentenced if convicted of the felony. The court found that Tepper was competent to stand trial, but noted its dismay at the time Tepper had been incarcerated given the sentence he could have received and urged defense counsel to at least move to have Tepper released from custody pending trial. Defense counsel did so, and the court authorized Tepper's release in January 2016.

¶21          We recognize that Tepper's competency to stand trial and ability to be restored to competency was a fluid situation. However, he was being held in high security single inmate cells for restoration for over two years, longer than he could have been sentenced if convicted of the felony. At some earlier point in the proceedings, defense counsel could have alerted the prosecutor and the superior court to this fact and moved to have Tepper released pending trial, rather than go through a second and then a third round of restoration. Defense counsel could also have requested a less restrictive treatment alternative pursuant to A.R. S. § 13-4512(D) (2017) (providing that the court shall select the least restrictive treatment alternative after considering factors such as the threat to public safety, the defendant's cooperation during outpatient competency examinations and the defendant's willingness to submit to outpatient competency restoration treatment). And the parties could have recognized and pointed out to the

court earlier in the proceedings that holding Tepper for a time approaching his maximum sentence was inconsistent with the statutory framework for Rule 11 proceedings and might not be serving the interests of justice. *See* A.R.S. § 13-4511 (2009) ("If the court finds that a defendant is incompetent to stand trial, the court shall determine . . . 2. The maximum sentence the defendant could have received pursuant to [the criminal code]."); *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (holding that at "the least, due process required that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed"). Without faulting counsel for taking advocacy positions they thought were appropriate, they could have done more to avoid what can, at best, be called a result not fit for civilized society.[3] Nevertheless, we do not find any reversible error requiring us to set aside Tepper's conviction. Although Tepper argues that we can reverse his conviction because of his two-year incarceration, the two cases on which he relies involve criminal convictions that were reversed for other reasons and do not compel the conclusion he urges. *See Rochin v. California*, 342 U.S. 165, 172-74 (1952) (holding police cannot extract evidence from inside a person's body by force); *United States v. Toscanino*, 500 F.2d 267, 275-76 (2nd Cir. 1974), *abrogated in part by In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 167 (2nd Cir. 2008) (holding that foreign citizens are protected against unlawful searches and seizures by United States government in foreign countries).

¶22 We have found several cases reversing a conviction or approving dismissal of charges for due process violations in delays involving restoration to competency. However, those cases are distinguishable from the facts here. *United States v. Dunn*, 459 F.2d 1115, 1117, 1121 (D.C. Cir. 1972) (reversing conviction on speedy trial grounds after eighteen months in restoration process, but noting that delays were in large part due to government and treatment center failures); *State v. Rotherham*, 923 P.2d 1131, 1149 (N.M. 1996) (remanding case for evidentiary hearing to determine if violation of state restoration statutes was result of government neglect or requested by defendant, noting that delay cause by defendant's own initiative will not justify dismissal of charges). Here, the length of commitment was not caused by government neglect and at least in part was at the defendant's own request.

---

[3] "The degree of civilization in a society can be judged by entering its prisons." Fydor Dostoevsky, *The House of the Dead* (1853).

III.    Trial in Absentia

**¶23**    Tepper argues he was denied his constitutional right to be present at trial.  Claiming he was unable to voluntarily waive his presence, Tepper contends the superior court erred by proceeding in absentia.

**¶24**    On the first day of trial, Tepper did not appear. Defense counsel objected to trying Tepper in absentia and asserted Tepper was incapable of voluntarily waiving his absence given his mental health. Noting medical professionals recently found Tepper competent to stand trial, the court found no good cause for his absence and directed the parties to proceed in absentia. When Tepper subsequently appeared for sentencing after being apprehended pursuant to a bench warrant, he did not offer any explanation for his failure to appear at trial.

**¶25**    A defendant has a constitutional right to be present for trial, but may voluntarily relinquish the right to attend.  *State v. Garcia-Contreras*, 191 Ariz. 144, 146-47, ¶¶ 8-9 (1998). A trial court "may infer that a defendant's absence is voluntary if the defendant had personal knowledge of the time of the proceeding, his right to be present, and the warning that the proceeding would take place in his absence if he failed to appear." *State v. Muniz-Caudillo*, 185 Ariz. 261, 262 (App. 1996).  "Once a defendant's knowledge of the trial date is shown, the defendant has the burden of persuading the court that his absence was not voluntary." *State v. Tudgay*, 128 Ariz. 1, 3 (1981) (quotation omitted).  Because "the existence of a waiver of the right to be present is basically a question of fact," we review a trial court's decision to proceed in absentia based on a defendant's voluntary absence for an abuse of discretion. *State v. Bishop*, 139 Ariz. 567, 569 (1984).

**¶26**    Applying these principles here, Tepper does not contest that the superior court properly notified him of the time and place of trial. Instead, he argues that when the court admonished him at the release hearing, he was unable to understand what was being said.  As noted *supra* ¶¶ 8-15, however, Tepper's statements and conduct at the hearing, viewed in the context of the entire proceeding, reflect that he understood what was going on and being asked of him.  Moreover, the record reflects that Tepper was fully aware trial could proceed in his absence, as evidenced by his statement during a psychological evaluation that he wished to be tried in absentia. Given his failure to provide any explanation for his absence post-trial, Tepper has not overcome the presumption that he voluntarily absented himself from trial, and the court therefore did not abuse its discretion by proceeding in absentia. *See State v. Cumbo*, 96 Ariz. 385, 387 (1964) (concluding trial court did not abuse discretion by trying the

defendant in absentia, noting the defendant failed to offer any basis for his absence in a motion for new trial or at sentencing).

## IV. Pretrial Detention

**¶27** Tepper argues that both the nature and length of his pretrial confinement was unconstitutional.

**¶28** As delineated by statute, a defendant may only directly appeal from: (1) a final judgment of conviction or verdict of guilty except insane, (2) an order denying a motion for a new trial, (3) an order made after judgment affecting the substantial rights of the party, and (4) a sentence on the grounds that it is illegal or excessive. A.R.S. § 13-4033. Accordingly, a challenge to the conditions of confinement, regardless of merit, may not be raised in a direct appeal. *See In re Daniel A.*, 210 Ariz. 162, 166, ¶ 18 (App. 2005) ("Whatever the merits of the contention that the conditions of . . . confinement" are unconstitutional, "a direct appeal from commitment is not the appropriate method of challenge."). While we have already discussed our dismay at the length of time Tepper was kept in solitary confinement during restoration efforts, the constitutionality of his detention is not properly before us, and we do not address its merits.

## V. Post-trial Detention

**¶29** Tepper argues he was subjected to cruel and unusual punishment when he was held in jail pending sentencing after his post-trial arrest. Specifically, and relying on *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), Tepper asserts his twenty-six day detention following his arrest pursuant to a bench warrant was unconstitutional.

**¶30** Because Tepper did not raise this claim in the superior court, we review only for fundamental error and resulting prejudice. *Henderson*, 210 Ariz. at 567, ¶ 19. In *Haygood*, the court held that a detention "beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest" or a violation of due process. *Haygood*, 769 F.2d at 1354 (quotations omitted).

**¶31** In this case, the court issued a bench warrant after Tepper was tried and convicted in absentia on the amended charge of misdemeanor criminal damage. On March 17, 2016, approximately six weeks after the bench warrant issued, Tepper was apprehended by the State. His initial court hearing was scheduled for March 24, 2016, but was then rescheduled for March 30, 2016.

¶32     Tepper refused transport and failed to appear at the March 30, 2016 sentencing hearing, and the trial court rescheduled the hearing for April 6, 2016 and ordered that Tepper be transported to the hearing "by any means necessary." Nonetheless, Tepper failed to appear at the April 6, 2016 sentencing hearing, having been "removed from the courtroom twice" that morning "due to disruptive behavior." Two days later, on April 8, 2016, Tepper appeared for sentencing, was sentenced to 180 days, and credited with 180 days' presentence incarceration.

¶33     Unlike the circumstances in *Haygood*, in this case, Tepper was not detained beyond the termination of his sentence.  To the contrary, he was held awaiting sentencing.  Although Tepper correctly notes that his pretrial detention exceeded the maximum sentence the superior court could impose, the court nonetheless did not commit reversible error in requiring his presence at sentencing.  *See* Ariz. R. Crim. P 26.9 ("The defendant . . . shall be present at sentencing.").  However, the court did have authority to waive that presence given the extraordinary circumstances in this case. *State v. Ruiz*, 236 Ariz. 317, 325, ¶ 30 (App.  2014).  Indeed, counsel for Tepper and for the State could have urged the court to sentence Tepper after he was found guilty rather than wait for him to be arrested since his two-year pre-trial incarceration vastly exceeded the six-month sentence he could have received for the misdemeanor. Nevertheless, given this record, including that the majority of Tepper's post-trial detention was attributable to his own conduct, refusing transport and behaving in a manner that led to his removal from the courtroom, Tepper has not shown that the superior court committed error, much less fundamental, prejudicial error, by detaining him for sentencing.

**CONCLUSION**

¶34     For the foregoing reasons, we affirm Tepper's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA